**E. R. J. NEWINGTON, Plaintiff,**

v.

**UNITED STATES of America, Defendant.**

**Civ. A. No. 265-71-N.**

United States District Court, E. D. Virginia, Norfolk Division.

March 2, 1973.

---

Leonard B. Sachs, Norfolk, Va., for plaintiff.

Emmett B. Lewis, Trial Atty., Admiralty & Shipping Section, U. S. Dept. of Justice, Washington, D. C., Brian P. Gettings, U. S. Atty., Norfolk, Va., for defendant.

## MEMORANDUM ORDER

WALTER E. HOFFMAN, Chief Judge.

The plaintiff, E. R. J. Newington, a British national, brings this action against the United States under the authority of the Public Vessels Act, 46 U. S.C.A. § 781 et seq., and the Suits in Admiralty Act, 46 U.S.C.A. § 741 et seq. The United States, by way of a motion for summary judgment, has contested this court's jurisdiction to hear the matter, such jurisdiction having been preempted by the provisions of the North Atlantic Treaty Status of Forces Agreement (NATO–SOFA), T.I.A.S. 2846; 4 U.S.T. 1792.

The facts which give rise to the claim are as follows.

Newington was a civilian employee of the United States Army assigned to the United States Army Marine Fleet Activity, Hythe, Southampton, Hampshire, England (hereinafter "Hythe"). In May 1969, he was ordered to proceed to Bremerhaven, Germany with other Army employees to take custody of a 65-foot vessel (the T–430) and to return said vessel to Hythe.

The T–430 was at all times owned and operated by the United States Army pursuant to its military activities in Europe and in connection with its duties as a member of the North Atlantic Treaty Organization (NATO).

The route from Bremerhaven to Hythe took the T–430 through various inland canals and waterways of the Netherlands. While in one such waterway, near Leiden, in the Netherlands, the plaintiff was injured in the performance of his duties while on board said vessel, when his foot became entangled in a mooring line. This accident occurred in the territorial waters of the Netherlands.

On April 30, 1971, Newington submitted a claim for £16,944.80 (approximately $40,000) in damages to the Dutch Ministry of Defense at The Hague, the Netherlands, pursuant to Article VIII (5) of the NATO–SOFA (a multilateral treaty to which both the Netherlands and the United States are parties). On November 23, 1971, the Dutch Ministry of Defense denied plaintiff's claim, and the plaintiff elected to file this suit as opposed to exercising his right of appeal from the administrative decision in the Netherlands.

The defendant's contention is based on a particular interpretation of the following language found in Article VIII of NATO–SOFA of June 19, 1951:

> "5. Claims * * * arising out of acts or omission of members of a force or civilian component done in the performance of official duty, or out of any other act, omission or occurrence for which a force or civilian component is responsible, *and causing damage* in the territory of the receiving State *to third parties,* other than any of the contracting parties * * *" (emphasis added) T.I.A.S. 2846, 4 U.S.T. 1792, 1806–1808.

The United States claims that the T–430 and her crew of Army and civilian personnel amounted to a "force" and/or a "civilian component" in the Netherlands, which was the "receiving state." It is alleged and assumed for the purposes of this motion that Newington's injuries were sustained as a result of the acts or omissions of the other crew members of T–430, ergo caused by the acts of a force or civilian component. The controversy is whether the plaintiff, who is admittedly a member of the civilian component, may properly be classified as a third party thereby forcing him to utilize the remedies afforded him by NATO–SOFA.

Both sides candidly admit that the NATO–SOFA agreement itself supplies no means of elucidation as to the meaning and scope of the third-party clause, nor has there been any interpretation of it by any American court. The defendant argues that the Department of Defense has indicated a preference to include members of a force and civilian component within the ambit of third parties and that this interpretation should be accorded great weight. Kolovrat v. Oregon, 366 U.S. 187, 81 S.Ct. 922, 6 L.Ed.2d 218 (1961); Factor v. Laubenheimer, 290 U.S. 276, 294–295, 54 S.Ct. 191, 78 L.Ed. 315 (1933). The United States has apparently overlooked two important aspects of the Department of Defense directive of February 26, 1959. First, such an interpretation is not compelled by law but is merely a matter of reciprocity. Also, the Department would not advocate their position if it would preclude United States citizens from pursing other statutory claims remedies provided by United States legislation.

█ The Defense Department readily admits that "as a legal matter it is fairly open to question whether members of a force, * * * or a civilian component should be considered proper third parties for purposes of Article VIII." Department of Defense Directive, February 26, 1959. The directive goes on to say that while the Army has not been including these individuals, it has· no objection to doing so. Not being impermissible, the Department feels it is desirable to do so "where requested by the individual foreign country for the Army to be prepared to accord like treatment on a reciprocal basis." *Id.* In this case the Netherlands administrative agency refused to recognize Newington's claim; therefore, there is a lack of comity. For this reason, if for no other, by the De-

partment's own instructions, members of civilian components should not be included as third persons, in dealings with the Netherlands.

The second step in the defendant's argument is that since these members are included in the third-party clause, they are thereby limited to the remedy set out in NATO–SOFA. Shafter v. United States, 273 F.Supp. 152 (S.D.N.Y.), aff'd per curiam 400 F.2d 584 (2 Cir., 1968), cert. denied, 393 U.S. 1086, 89 S. Ct. 871, 21 L.Ed.2d 779 (1969). It would seem from the elaborate array of authorities set forth in the government's brief in support of its motion, that if we were to determine this plaintiff and others similarly situated within the intended meaning of third parties, their exclusive remedy would be dictated in Article VIII of NATO–SOFA. The compulsion of this result impeaches the initial assumption that the Department of Defense would utilize such a broad interpretation of the agreement. In the directive submitted by the defendant, such interpretation is urged "only if we are prepared to consider NATO–SOFA and the United States implementing legislation in this regard not as preemptive of the field and therefore not necessarily an exclusive remedy for such claimants."

For the reasons set out above, this court declines to accept the government's contention that Newington should be considered as a third party, *a fortiori* his remedy cannot exclusively lie with Article VIII of NATO–SOFA. This conclusion is further substantiated by the legislative history of the provision. In testimony before the Senate Foreign Relations Committee, the purpose of SOFA was clearly defined as "to provide more or less uniform rights and responsibilities in the relationship of visiting forces *to host countries* * * *" (emphasis added) Senate Executive Report No. 1, 83rd Congress, 1st Session, p. 82, statement by Assistant Attorney General J. Lee Rankin. Elsewhere in the same report it is stated that the section was intended to "reduce to a minimum the friction that almost inevitably arises from torts committed by members of the force or civilian components *against members of the local population.*" *Id.* at 13.

■ This view of limiting third persons to local citizens in the absence of some additional agreement between the United States and another country is most consistent not only with the legislative history but also with the general conflict-of-law/choice-of-law principle of most significant contacts which has been given full recognition by the Supreme Court. *See* Lauritzen v. Larsen, 345 U. S. 571, 582, 73 S.Ct. 921, 97 L.Ed. 1254 (1953). A receiving nation has obvious interests in seeing that one of its injured wards was adequately compensated. Conversely, a receiving nation has at best minimal interest in a suit between two members of a force or civilian component of a sending nation. The two foreign cases cited by the defendant are still consistent with this premise, even though the courts of the receiving state took jurisdiction in a suit between two such parties. Upon reading these cases, the reason is obvious in that one member of the "sending state component" was in fact a national of the forum state. This presents a situation which is totally different from that of the case currently before this court.

For the reasons heretofore stated, it is ordered that the defendant's motion for summary judgment be, and it hereby is, denied. Unless the defendant desires to seek an interlocutory appeal, in which event the court will certify same as appropriate, counsel for the parties will present, within 30 days from this date, an appropriate schedule of discovery contemplated and *de bene esse* depositions planned, to the end that this case may ultimately be concluded.